IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ROBERT A. BRUNIG, individually and §
doing business as Brunig & Assoc., §
                                      §
     Plaintiff               §
                                        §
v.                                   §    CIVIL ACTION NO. H-07-1644
                                        §
JOHN S. CLARK, individually and as §
trustee of the John S. and Loretta §
J. Clark Trust; JOHN S. AND §
LORETTA J. CLARK TRUST; CLARK §
PETROLEUM & LAND, INC., a Texas §
Corporation; BARBARA R. LEIDTKE; §
and JOHN DOE,                 §
                                        §
     Defendants.            §

<u>**MEMORANDUM AND RECOMMENDATION**</u>

Pending before the court[1] are Defendant's Motion to Dismiss (Docket Entry No. 11), Plaintiff's Motion to Dismiss Defendant's Counterclaim (Docket Entry No. 25), and the responses filed thereto. The court has considered the motions, all relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendant's Motion to Dismiss be **GRANTED** and that Plaintiff's Motion to Dismiss Defendant's Counterclaim be **DENIED** as moot.

**I.  Case Background**

Plaintiff, an attorney, filed this action against his current

---

[1]    This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and the Cost and Delay Reduction Plan under the Civil Justice Reform Act. Docket Entry No. 26.

client under Section 12(a)(2) of the Securities Act of 1933[2] ("Securities Act"), Section 10(b) of the Securities Exchange Act of 1934[3] ("Exchange Act"), SEC Rule 10(b)(5),[4] the Racketeer Influenced and Corrupt Organizations Act[5] ("RICO"). Plaintiff also brought several state law claims. All claims brought by Plaintiff originated from a dispute over attorney's fees.

**A.    Factual History**

Plaintiff Robert A. Brunig ("Plaintiff") is an attorney licensed to practice law in the State of Texas and doing business as Brunig & Associates.[6] Defendant John S. Clark ("Defendant Clark") is the sole trustee and principal beneficiary of the John S. and Loretta J. Clark Trust ("Defendant Trust").[7] Defendant Clark is an officer of Clark Petroleum and Land, Inc. ("Defendant CPLI"), a Texas corporation under the control of Defendant Clark.[8] Defendant Barbara J. Liedtke ("Defendant Liedtke") is the daughter of Defendant Clark, serves as a director and officer of CPLI, and

---

[2]    15 U.S.C. § 77l(a)(2).

[3]    15 U.S.C. § 78j(b).

[4]    17 C.F.R. § 240.10b-5.

[5]    18 U.S.C. § 1961.

[6]    See Plaintiff's Complaint ("Complaint"), Docket Entry No. 1, p. 1. For purposes of reviewing this motion to dismiss, the recitation of the background herein accepts all facts pleaded by Plaintiff as true. See Cornish v. Corr. Servs. Corp., 402 F.3d 545, 548-49 (5th Cir. 2005).

[7]    Complaint, Docket Entry No. 1, p. 2.

[8]    Id.

is a beneficiary of the Trust.[9]

In June of 1999, Defendant Clark, individually and through Defendant Trust, acquired oil and gas leases and surface rights in a project in Anderson County, Texas ("Temple-Eastex").[10]

In March of 2004, Defendant Clark entered into an Attorney Consultation and Fee Agreement for Contingency Case ("Fee Agreement") with Plaintiff.[11]   The Fee Agreement provided, in pertinent part:

> 2.01   In consideration of services rendered and to be rendered by Attorney, Client hereby agrees to pay to Attorney (a)(1) thirty-three (33%) percent of all monies and other payment or property (including the value of all property whose title is cleared and returned to Client) collected prior to the filing of a lawsuit, (ii) thirty-six (36%) percent of all monies and other payment or property (including the value of all property whose title is cleared and returned to Client) after the filing of a lawsuit but prior to the filing of any appeal and (iii) forty (40%) percent of all monies and other payment or property (including the value of all property whose title is cleared and returned to Client) after said filing of any appeal and (b) any and all attorney's fees and costs awarded by a court.  If a claim o[r] cause of action is such that the fee payable to an attorney is set or limited by law, the amount payable to Attorney shall be so limited.
>
> .  .  .  .
>
> 3.01   In consideration of Attorney's services, Client hereby sells, conveys and assigns to Attorney an interest, to the extent herein indicated in Section II, to Client's claim and cause of action, and in any action,

---

[9]    Id.

[10]   Id. at pp. 2-5.

[11]   Id. at p. 7.

compromise, settlement, judgment, payment of services, profits or recovery thereon.[12]

Plaintiff represented Defendant Clark[13] on various matters concerning production payments on the Temple-Eastex leases, as well as the litigation that arose therefrom.  In and around January and February of 2007, Plaintiff and Defendant Clark discussed and exchanged correspondence regarding Plaintiff's attorney's fees.[14] Despite the existence of the Fee Agreement, the amount of payment was often in dispute and frequently changed form.

At one point during fee discussions, Plaintiff was assigned a "forty (40%) percent working interest and a twenty (20%) percent net revenue interest" in leases in Madison County, Texas ("Madisonville").[15]  When Plaintiff executed the Madisonville assignment, he was unaware, inter alia, of the terms of the underlying leases, the "amount of production revenues paid to or for the benefit of Clark, the Trust, and/or CPLI . . . in connection with the Temple-Eastex lease(s)," that the Madisonville leases were subject to "overriding royalty interests that might be conveyed to Clark," and that Defendant CPLI had incurred operating expenses for the Temple-Eastex leases that Defendant Clark,

---

[12]    Id. at p. 8.

[13]    Plaintiff continues to represent Defendant Clark at the present time.

[14]    Complaint, Docket Entry No. 1, pp. 22-27.

[15]    See id. at pp. 30, 34.

4

Defendant Trust, and Defendant CPLI intended to deem operating expenses for the Madisonville leases."[16]

Defendant Clark recorded the assignment of the overriding Madisonville Leases in March of 2007 and soon thereafter invoiced Plaintiff via e-mail for two-months payment on the Madisonville operating expenses, which were actually incurred on the Temple-Eastex leases.[17]

After receiving the invoice, Plaintiff sent Defendant Clark an e-mail detailing the extensive history of their attorney's fees discussions and voicing his displeasure in the then-current fee situation.[18]   Plaintiff informed Defendant Clark that Michael T. Wilson, an employee of Defendant Clark, had assured him that all operating expenses would be paid out of revenues.[19]   Plaintiff indicated his suspicion that, in order to obtain the overriding royalty interests in the Madisonville leases, Defendant Clark transferred Plaintiff's interest in the Temple-Eastex leases.[20] Finally, Plaintiff asserted a number of demands to Defendant Clark, including evidence of the consideration provided for the overriding royalty interests, access to agreements made regarding the

---

[16]     Id. at pp. 34-35.

[17]     Id. at p. 37.

[18]     Id. at pp. 37-42.

[19]     Id. at p. 40.

[20]     Id. at p. 41.

Madisonville and Temple-Eastex leases, and an assignment of the overriding royalty interests.[21]

On April 15, 2007, Defendant CPLI sent Plaintiff a "notice of default" via e-mail, but no further response to Plaintiff's demands.[22]

**B.** **Procedural History**

Plaintiff filed the instant action on May 15, 2007, alleging violations of Section 12(a)(2) of the Securities Act, Section 10(b) of the Exchange Act, SEC Rule 10b-5, RICO, and additional state law claims of fraud, breach of contract, accounting, conversion, and civil conspiracy.[23]  Defendants responded with a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), alleging that Plaintiff failed to state a cause of action upon which relief could be granted and that Defendants had not been served in compliance with the Federal Rules of Civil Procedure.[24]

---

[21]    Id.

[22]    Id.

[23]    See id. at p. 1.

[24]    See Defendant's Motion to Dismiss, Docket Entry No. 11, p. 2. Defendants have since waived their motion to dismiss for lack of proper service. See Minute Entry Order dated September 6, 2007, Docket Entry No. 32; Hearing on September 6, 2007.

Defendants filed their Answer and Counterclaim on July 13, 2007, alleging fraud on the part of Plaintiff.[25]  On July 24, 2007, Plaintiff filed a motion to dismiss said counterclaim.[26]

## II.  Legal Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for a "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not detail factual allegations, a plaintiff's obligation under the Federal Rule of Civil Procedure 8(a)(2), "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1965 (2007); Papasan v. Allain, 478 U.S. 265, 286 (1986).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 127 S. Ct. at 1965 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)).  "The pleading must contain something more . . . than . . . a statement of facts that

---

[25]    See Defendant's Answer and Counterclaim, Docket Entry No. 21, pp. 1, 25.

[26]    See Plaintiff's Motion to Dismiss Counterclaim, Docket Entry No. 25, p. 1.

merely creates a suspicion of a legally cognizable right of action."[27]   Id.

### III.  Analysis

In this case, Plaintiff alleges that his interest in Defendant's property, as provided in the fee agreement, constitutes a "security" under both the Securities Act and the Exchange Act, and that Defendants made untrue statements of material fact in connection with the sale of such securities.[28]

Plaintiff further contends that Defendant committed mail fraud and wire fraud and that, in committing those acts, violated RICO.[29] Specifically, Plaintiff alleges that Clark, the Trust, CPLI, Liedtke, BBC Industries,[30] and others, qualify as an "enterprise"

---

[27]    In his recitation of the legal standard for dismissing a claim, Plaintiff suggests that all that is required is fair notice to the defendants and the grounds upon which the claims rest. See Plaintiff's Brief in Opposition to Motion to Dismiss, Docket Entry No. 18, p. 24. Plaintiff argues that the long-accepted rule of the Supreme Court is that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 24-25 (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). This argument is misplaced. A recent Supreme Court decision explained the "no set of facts" language in Conley. See Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1960, 1965 (2007) ("The 'no set of facts' language has been questioned, criticized, and explained away long enough by courts and commentators, and is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. Conley described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival.").

[28]    See Complaint, Docket Entry No. 1, pp. 43-45.

[29]    Id. at p. 48.

[30]    BBC Industries was not joined as a party in this case. Defendants cite Plaintiff's failure to join BBC as a party as additional support for granting their motion to dismiss. Considering its disposition as to the pleadings in this case, the court is not ruling on such joinder issues at this

under RICO and engaged in a "pattern of racketeering activity" by devising a "scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises."[31]   Plaintiff contends that the enterprise received income from such activity, and, as a result, Plaintiff is entitled to "threefold his damages sustained and the cost of suit, including a reasonable attorney's fee.[32]

Defendants ask this court to dismiss Plaintiff's action for failure to state a claim upon which relief can be granted.[33] Defendants contend that the transactions described by Plaintiff are exempt from both the Securities Act and the Exchange Act under 15 U.S.C. § 77c(a), which exempts securities offered and sold only to residents and businesses of a single state from coverage of those statutes.[34]

The primary basis of the motion, however, is Plaintiff's failure to properly plead his RICO claim.   Defendants assert that Plaintiff did not properly plead any specific conduct by the defendants or show any evidence of the existence of any enterprise

---

time.

[31]      Id. at pp. 47, 48.

[32]      Id. at p. 49.

[33]      See Plaintiff's Motion to Dismiss, Docket Entry No. 25, p. 2.

[34]      In addition to asserting the applicability of the intrastate exception, Defendants also contend that Defendant Liedtke has no liability as an individual in this case.   Considering the court's disposition as to the pleadings, neither the applicability of the exception under Section 77c(a) or Defendant Liedtke's individual liability is addressed herein.

separate from the alleged pattern of racketeering.   According to Defendants, Plaintiff failed to establish a pattern of racketeering activity or threat of continued criminal activity.

Defendants ask the court to dismiss all remaining state law claims for want of jurisdiction.

**A.   <u>Securities Act Claim</u>**

Section 12 of the Securities Act states that any person who "offers or sells a security . . . by the use of any means or instruments of transportation or communication in interstate commerce or of the mails . . . which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements . . . not misleading . . . shall be liable . . . to the person purchasing such security from him . . . ." 15 U.S.C. § 77l(a)(2).

All securities fraud claims, including fraud claims under Section 12(b) of the Securities Act, require a plaintiff, under Federal Rule of Civil Procedure 9(b), to state with particularity the circumstances constituting the alleged fraud or mistake.   <u>See Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.</u>, 365 F.3d 353, 362 (5th Cir. 2004); <u>Melder v. Morris</u>, 27 F.3d 1097, 1100 (5th Cir. 1994).   The heightened pleading standard "provides defendants with fair notice of the plaintiff's claims, protects defendants from harm to their reputation and goodwill, reduces the number of strike suits, and prevents plaintiffs from filing baseless claims [and]

then attempting to discover unknown wrongs." <u>Melder</u>, 27 F.3d at 1100.

To satisfy the pleading requirements, a plaintiff must: (1) specify the allegedly fraudulent statements, (2) identify the speaker, (3) indicate when and where the fraudulent statements were made, and (4) explain why such statements were fraudulent. <u>See</u> <u>Southland Sec. Corp.</u>, 365 F.3d at 362.

Plaintiff's pleadings in this case are filled with factual background but void of particularity. The court searched through a mass of detail regarding Defendant's business transactions, the counseling services provided by Plaintiff, and fee discussions between the two parties; but, in the end, the court can only speculate as to what Plaintiff is alleging as fraudulent actions by Defendants.

Plaintiff makes superficial allegations of questionable conduct on behalf of Defendants periodically in his complaint, but fails to satisfy the purpose of the heightened pleading standard. For example, Plaintiff states that he was invoiced for operating expenses of the Madisonville leases, which were actually incurred on the Temple-Eastex leases. However, he failed to point to any particular omission or misrepresentation by any defendant that led him to believe that the expenses were incurred on a different lease than that for which he was billed. To the extent to which Plaintiff is alleging the invoice itself was the misrepresentation,

11

he does not provide any further indication as to *why* the invoice was fraudulent.

Plaintiff also stated that, when he executed the Madisonville assignment, he was unaware of a number of details, including the fact that the leases were subject to overriding royalty interests. However, yet again, Plaintiff provided no further detail as to the circumstances of the alleged fraud.

Plaintiff's pleadings are insufficient.  Plaintiff provides a mass of factual background, but the bulk of information is not enough to compensate for the lack of particularity.  See <u>Southland Sec. Corp.</u>, 365 F.3d at 362 ("A complaint can be long-winded, even prolix, without pleading with particularity. Indeed such garrulous style is not an uncommon mask for an absence of detail.") (citing <u>Williams v. WMX Techs, Inc</u>., 112 F.3d 175, 178 (5th Cir. 1997)). Plaintiff's pleadings fail to provide Defendants with fair notice of his securities fraud claims.

**B.**  **<u>Exchange Act Claim</u>**

Under Section 10(b) of the Exchange Act, it is "illegal for a person to use or employ, in connection with the purchase or sale of any security, any manipulative or deceptive device or contrivance in contravention of the SEC's rules."  <u>Fin. Acquisition Ptnrs. v. Blackwell</u>, 440 F.3d 278, 286 (5th Cir. 2006). "Rule 10b-5 makes it unlawful for anyone to make a false statement of material fact [in connection with the purchase or sale of any security] or to omit a

12

material fact necessary to make the statement not misleading."
Id.; see also 17 C.F.R. § 240.10b-5.

Section 10(b) and Rule 10b-5, like Section 12(b)(5) of the
Securities Act, are subject to heightened pleading requirements as
provided by Federal Rule of Civil Procedure 9(b) and the
corresponding case law.  See ABC Arbitrage Plaintiff's Group v.
Tchuruk, 291 F.3d 336, 348-50 (5th Cir. 2002).  Under Section 10(b)
and Rule 10b-5, Plaintiff must allege, "(1) a misstatement or an
omission (2) of material fact[35] (3) made with scienter (4) on which
plaintiff relied (5) that proximately caused [plaintiffs'] injury."
See ABC Arbitrage Plaintiff's Group, 291 F.3d at 348.

The Private Securities Litigation Reform Act[36] ("PSLRA")
provides additional guidance as to pleading requirements under
Section 10(b) and Rule 10b-5.  See also ABC Arbitrage Plaintiff's
Group, 291 F.3d at 350 ("If a complaint fails to meet the pleading
requirements of the PSLRA or Rule 9(b), the complaint must be
dismissed.").  In ABC Arbitrage Plaintiff's Group, the Fifth
Circuit summarized the relevant standard:

> a plaintiff pleading a false or misleading statement or
> omission as the basis for a section 10(b) and Rule 10b-5
> securities fraud claim must, to avoid dismissal pursuant
> to Rule 9(b) and 15 U.S.C. §§ 78u-4(b)(1) &
> 78u-4(b)(3)(A):

---

[35]    A plaintiff may establish materiality by showing that the omitted or
misrepresented information would have been significant to a reasonable investor
in making his investing decisions.  Basic Inc. v. Levinson, 485 U.S. 224, 240
(1988); ABC Arbitrage Plaintiff's Group, 291 F.3d at 359.

[36]    See 15 U.S.C. § 78u-4

(1) specify . . . each statement alleged to have been misleading, i.e., contended to be fraudulent;

(2) identify the speaker;

(3) state when and where the statement was made;

(4) plead with particularity the contents of the false representations;

(5) plead with particularity what the person making the misrepresentation obtained thereby; and

(6) explain the reason or reasons why the statement is misleading, i.e., why the statement is fraudulent.

This is the "who, what, when, where, and how" required under Rule 9(b) in our securities fraud jurisprudence and under the PSLRA. Additionally, under 15 U.S.C. § 78u-4(b)(1), for allegations made on information and belief, the plaintiff must:

(7) state with particularity all facts on which that belief is formed, i.e., set forth a factual basis for such belief.

<u>ABC Arbitrage Plaintiff's Group</u>, 291 F.3d at 350.

The court's analysis of the sufficiency of Plaintiff's pleadings under Section 12(b) is applicable to Plaintiff's claims under Section 10(b) and Rule 10b-5, despite the slight difference in pleading requirements. Again, the court can only speculate as to what Plaintiff is alleging as fraudulent actions by Defendants. Plaintiff never specifically indicates what actions, statements, or omissions on behalf of the defendants that it is alleging are fraudulent. Moreover, when a vague fraudulent act (the "what") *is* alleged, Plaintiff fails to provide one or more of the "who," "when," "where," and "how."

Plaintiff's complaint merely states the elements of the alleged crime, and does so almost verbatim.[37]  <u>Twombly</u>, in its discussion of the general pleading requirements under Federal Rule of Civil Procedure 8(a)(2), instructs that a "formulaic recitation of a cause of action's elements will not do" to provide grounds for an entitlement to relief.  127 S. Ct. at 1959.  If a "formulaic recitation" is insufficient to satisfy even the general pleading standard, such a recitation in this case is certainly insufficient to satisfy any heightened standard requiring particularity.

Accordingly, the court finds that Plaintiff's pleadings fail to provide Defendants with fair notice of his securities fraud claims under Section 10(b) and Rule 10b-5.

**C.   <u>RICO Claim</u>**

The Racketeer Influenced and Corrupt Organizations Act prohibits certain conduct involving a "pattern of racketeering activity."  <u>Anza v. Ideal Steel Supply Corp.</u>, ___ U.S. ___, 126 S. Ct. 1991, 1994 (2006).  "One of RICO's enforcement mechanisms is a private right of action, available to any person injured in his business or property by reason of a violation of the Act's substantive restrictions."  <u>Id.</u>  In order to state a claim under RICO, a plaintiff must allege: (1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  <u>See</u> <u>Sedima, S.P.R.L. v. Imrex Co.</u>, 473 U.S. 479, 496 (1985).

---

[37]     <u>See</u> Complaint, Docket Entry No. 1, p. 45.

Plaintiff bases his RICO claim upon the alleged "predicate acts" of mail fraud under 18 U.S.C. § 1341 and wire fraud under 18 U.S.C. § 1343.[38]   Mail and wire fraud violations "result from a scheme devised for the purpose of defrauding by means of false pretenses, which include representations or promises and use of the mails or interstate wire communications in furtherance of that scheme." In re Lewisville Prop., Inc., 849 F.2d 946, 951 (5th Cir. 1988).

The heightened pleading requirement of Federal Rule of Civil Procedure 9(b) applies to RICO claims resting on allegations of fraud.  See Williams, 112 F.3d at 177; Tel-Phonic Serv., Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1139 (5th Cir. 1992).  The Fifth Circuit instructs that pleading fraud with particularity requires "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby." Williams, 112 F.3d at 177 (citing Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1068 (5th Cir. 1994)). Particularity further requires an explanation as to "why the statements were fraudulent." Williams, 112 F.3d at 177.

### 1.  Conduct

In this case, Plaintiff asserts that Defendants and BBC "engaged in a pattern of racketeering activity in a variety of ways, including, but not limited to engaging in mail fraud . . .

---

[38]   See Complaint, Docket Entry No. 1, p. 48.

16

and wire fraud . . . ."[39] (internal quotations omitted).  Plaintiff further explained the nature of the "conduct" by merely reciting, almost verbatim, the respective statutory language for mail and wire fraud.[40]  As indicated above, this "formulaic recitation" is insufficient to entitle Plaintiff to relief.  See Twombly, 127 S.Ct. at 1959.  Plaintiff's allegations pertaining to mail and wire fraud fail to meet the specificity required by Federal Rule of Civil Procedure 9(b).

Plaintiff provides evidence of numerous letters and e-mails sent by him to Defendant Clark, but very few instances of communication sent from any of the individual defendants to Plaintiff.[41]  Plaintiff never specifies which, if any, of these letters or e-mails are allegedly fraudulent.  Considering Plaintiff did not specifically identify any fraudulent statements, he certainly did not satisfy the "why" requirement as to any statements either.

In sum, Plaintiff has unmistakably failed to allege any sort of misrepresentations by Defendants through the use of the mails or wires in furtherance of a scheme to defraud.

## 2.  **Enterprise**

---

[39]    Complaint, Docket Entry No. 1, p. 48

[40]    Id.

[41]    See id. at pp. 30-42. Most of the communications between Plaintiff and Defendant Clark were exchanged through Michael Wilson, an employee of Defendant Clark.

A RICO enterprise includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Therefore, an enterprise can be either a legal entity or an "association-in-fact" enterprise. In re Burzynski, 989 F.2d 733, 743 (5th Cir. 1993). An association-in-fact enterprise must (1) have an existence separate and apart from the pattern of racketeering; (2) be an ongoing organization; and (3) have members who function as a continuing unit as shown by a hierarchical or consensual decision-making structure. See Delta Truck & Tractor, Inc. v. J.I. Case Co., 855 F.2d 241, 243 (5th Cir. 1988)(citing Manax v. McNamara, 842 F.2d 808, 811 (5th Cir. 1988)). "Moreover, Plaintiffs must plead specific facts, not mere conclusory allegations, which establish the enterprise." Montesano v. Seafirst Commercial Corp., 818 F.2d 423, 427 (5th Cir. 1987).

Here, Plaintiff's complaint simply states, "Clark, the Trust, CPLI, Liedke, BBC and others . . . associated themselves in fact, albeit not necessarily as part of a legal entity, and were an 'enterprise,' as that term is used in 18 U.S.C. § 1961(4)."[42] Plaintiff further states that the enterprise "functioned as a continuing unit over time through a hierarchical or consensual

---

[42]      Complaint, Docket Entry No. 1, p. 47.

decision-making structure" and that the individuals "all remained distinct from the 'enterprise' itself."[43]

Beyond inserting Defendants' names into a recitation of the requisite enterprise elements, Plaintiff offers no further explanation as to how any of the defendants were members of a RICO enterprise. Plaintiff has pled conclusuory allegations with no specific factual basis. Thus, Plaintiff has failed to meet the most fundamental pleading requirements concerning a RICO enterprise.

### 3.   Pattern of Racketeering Activity

Assuming, arguendo, that "predicate acts" of mail or wire fraud exist, one must still plead a "pattern" of such acts in order to state a viable RICO cause of action. See H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989). To prove a "pattern of racketeering activity," a plaintiff must show at least two related predicate acts of racketeering that amount to or pose a threat of continued criminal activity. 18 U.S.C. § 1961(5).

Even assuming Plaintiff properly alleged the minimum two predicate acts of mail or wire fraud, which the court holds he has not, Plaintiff has nonetheless failed to show the requisite continuity of criminal activity. Predicate acts extending over a few weeks or months that threaten no future criminal conduct do not satisfy this requirement. See Tel-Phonic Serv. Inc., 975 F.2d at

---

[43]     Id.

19

1140 (dismissing RICO claim because there has been no "specific threat of repetition" or any suggestion that the predicate acts or offenses are part of Defendants' "regular way of doing business"); Delta Truck & Trailer, Inc., 855 F.2d at 244 (affirming the dismissal of a RICO claim where the plaintiff alleged multiple acts of fraud that were part and parcel of a single, discrete and otherwise lawful commercial transaction).

Here, it appears the predicate acts alleged by Plaintiff were isolated events occurring over a time span of approximately two months and concerning the Temple-Eastex and Madisonville leases and the corresponding demand for payment of attorney's fees.[44] Plaintiff has pled absolutely no facts to suggest that any alleged act of mail or wire fraud was a regular part of Defendants' way of doing business.  Furthermore, the court can find absolutely no indication in Plaintiff's pleadings that Defendants pose any threat of future criminal activity.  Plaintiff fails in his complaint to mention future activity in even a general sense.[45]

### 4.  **Proximate Cause**

In addition to meeting the requisite RICO elements, a plaintiff's pleadings must indicate the existence of a causal relationship between the RICO predicate acts and the alleged damages.  See Anza, 126 S. Ct. at 1998.  ("When a court evaluates

---

[44]     Id. at 32-42.

[45]     See id. at 47-49.

20

a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries.").

Plaintiff's complaint states that, "[Plaintiff], individually and doing business as Brunig & Associates, has been injured in his business and property by reason of Clark, the Trust and CPLI's violations of RICO, 18 U.S.C. § 1962."[46]   These are exceedingly general allegations.  Although not specifically stated, the court speculates that Plaintiff's injury is his loss of attorney's fees. Plaintiff's complaint offers no direction as to how the alleged predicate acts "led directly" to Plaintiff's injury.

Moreover, even a proper pleading of proximate cause could not salvage the blatant lack of factual support for the remaining RICO elements.   The fatal flaws in Plaintiff's pleadings require a finding that Plaintiff has simply failed to substantiate a viable RICO claim.

**D.   Sanctions**

Federal Rule of Civil Procedure 11(b) provides:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading . . . an attorney is certifying to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, 1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; 2) the claims, defenses, and other legal contentions therein are warranted by existing

---

[46]    Id. at 49.

> law or by a non-frivolous argument for the extension,
> modification, or reversal of existing law or the
> establishment of new law; and 3) the allegations and
> other factual contentions have evidentiary support or, if
> specifically so identified, are likely to have
> evidentiary support after a reasonable opportunity for
> further investigation or discovery . . . .

Fed. R. Civ. P. 11(b)(1), (2), (3).

In Thomas v. Capital Sec. Serv., Inc., the Fifth Circuit held

that:

> Compliance with Rule 11 requires, when signing a
> pleading, motion, or other document, 1) that the attorney
> has conducted a reasonable inquiry into the facts which
> support the document; 2) that the attorney has conducted
> a reasonable inquiry into the law such that the document
> embodies existing legal principles or a good faith
> argument "for the extension, modification, or reversal of
> existing law;" and 3) that the motion is not interposed
> for purposes of delay, harassment, or increasing costs of
> litigation.

836 F.2d 866, 873-74 (5th Cir. 1988).   Compliance with these

affirmative duties is measured as of the time that the document is

signed.   Id.   Moreover, the standard under which an attorney is

measured is an objective, not subjective, standard of

reasonableness under the circumstances.   See Childs v. State Farm

Mut. Auto. Ins. Co., 29 F.3d 1018, 1024 (5th Cir. 1994).

Rule 11 provides for sanctions against "the attorneys, law

firms, or parties that have violated subdivision (b) or are

responsible for the violation."   Fed. R. Civ. P. 11(c).   Sanctions

may be initiated by motion or the court may impose sanctions sua

sponte.   Fed. R. Civ. P. 11(c)(1).

In the instant case, Plaintiff, an attorney, lacked evidentiary support to meet any of the elements of his alleged federal securities fraud claims under the Securities Act, Exchange Act, and Rule 10b-5.  Plaintiff's complaint failed to allege the requisite facts in support of the predicate acts of mail and wire fraud under RICO.  In addition, Plaintiff clearly failed to illustrate a pattern of racketeering activity or the existence of a RICO enterprise.

This is simply a dispute over payment of attorney's fees.  In his complaint, Plaintiff chronicles, at length, the legal services he provided Defendant Clark, and the evolving status of their fee agreement.  Only with great difficulty could the court even speculate as to what fraud and RICO claims Plaintiff may have been alleging in his pleadings.  Plaintiff failed to plead any of his claims with the requisite particularity.  Plaintiff's complaint is so deficient as to constitute bad faith.  The court certainly recognizes the controversy over Plaintiff's attorney's fees.  However, asserting baseless federal securities fraud and RICO claims against Defendants is simply not the answer.

It is of note that this is not the first baseless RICO claim that Plaintiff has brought in federal court.  In July of 2005, Plaintiff represented Defendant Clark in a RICO suit in the Eastern District of Texas.  See Clark v. Nat'l Equities Holdings, Inc., No. 4:05-CV-290 (E.D. Tex. Feb. 13, 2006).  In that case, as in the one

currently before the court, Plaintiff failed to allege the existence of an enterprise.  Id.  As a result, the RICO claims were dismissed with prejudice.  Id.

Because the imposition of reasonable attorney's fees and expenses has been deemed the "least severe sanction for a lawsuit that is wholly frivolous," Mercury Air Group, Inc., v. Mansour, 237 F.3d 542, 548 (5th Cir. 2001), the court finds it to be the appropriate sanction in the instant case.

It is therefore **RECOMMENDED** that the court sanction Plaintiff pursuant to Rule 11 for bringing baseless RICO and securities fraud claims in federal court.  It is further **RECOMMENDED** that the sanctions include the reasonable attorney's fees expended in filing Defendant's Motion to Dismiss and attending the court hearing on September 6, 2007.  The court previously warned Plaintiff that he may be subject to sanctions under Rule 11, but Plaintiff has taken no action to amend his pleadings.  If Plaintiff chooses to show cause why sanctions may not be warranted in this case, he may do so in his objections.

**E.    State Law Claims**

Because the court recommends dismissal of Plaintiff's federal claims against Defendants, the court also recommends that the court decline to exercise supplemental jurisdiction over Plaintiff's state law claims and Defendant's counterclaim for fraud.  See 28 U.S.C. § 1367(c)(3) (allowing district courts discretion to decline

to exercise supplemental jurisdiction over a state law claim when the court has dismissed all claims over which it had original jurisdiction); <u>Moore v. Willis Indep. Sch. Dist.</u>, 233 F.3d 871, 876 (5th Cir. 2000) (indicating that, upon dismissal of all federal claims, the court should dismiss the supplemental state law claims without prejudice).

## IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant's Motion to Dismiss be **GRANTED** and Plaintiff's Motion to Dismiss Defendant's Counterclaim be **DENIED** as moot.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have ten days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk, either electronically or by mail to P.O. Box 61010, Houston, Texas, 77208.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk Street, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 24th day of September, 2007.

Nancy K. Johnson
United States Magistrate Judge